# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

**CARLOS MURICIO LOVO TORRES,**

      **Petitioner,**

**v.**

                                          **Case No. 2:26cv245**
                                          **REDACTED[1]**

**LUIS ROSA, JR.,** *et al.,*

      **Respondents.**

## REPORT AND RECOMMENDATION

Pending before the Court is a Petition for a Writ of Habeas Corpus submitted pursuant to 28 U.S.C. § 2241 ("the Petition"), ECF No. 1, and Petitioner's Emergency Motion for a Temporary Restraining Order and Preliminary Injunction ("the Motion"), ECF No. 2. Respondents oppose granting the Petition and the Motion. ECF Nos. 14–15. This case was referred to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. § 636(b)(1)(A)–(B) and Rule 72(b) of the Federal Rules of Civil Procedure. For the foregoing reasons, the undersigned **RECOMMENDS** that the Petition, ECF No. 1, be **GRANTED** in part, **DENIED** in part, and that Petitioner be immediately released from custody. Furthermore, the undersigned **RECOMMENDS** that the Motion be **DISMISSED** as moot.

---

[1] Certain parts of this Report and Recommendation have been redacted because the information discussed has been submitted by Respondents under seal. These parts of the Report and Recommendation will be unredacted unless Respondents obtain an order overruling the undersigned's order ruling on Respondents' Motion to Seal. *See infra* Part IV.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Court received and filed the Petition on February 25, 2026. ECF No. 1. Petitioner Carlos Muricio Lovo Torres ("Petitioner") is a native and citizen of El Salvador who is currently detained pursuant to 8 U.S.C. § 1231 at Farmville Detention Center.[2] ECF No. 14, attach. 2 at 3, 7. Petitioner was admitted to the United States as a lawful permanent resident on January 12, 1999.[3] *Id.* at 3. Petitioner self-identified as a member of Mara Salvatrucha ("MS-13") in El Salvador to the Immigration Judge, and Enforcement and Removal Operations ("ERO") subsequently confirmed his gang affiliation. *Id.* Petitioner also stated during his third-country removal interview that he left MS-13 in 2010. *Id.*

On March 20, 2005, Petitioner was charged with Assault or Battery by Mob in violation of Va. Code Ann. § 18.2-42, which was later nolle prossed on June 6, 2005. *Id.* at 4. On August 29, 2005, Petitioner was charged with Carrying a Concealed Weapon in violation of Va. Code Ann. § 18.2-308, which was also nolle prossed on December 9, 2005. *Id.* On August 19, 2006, Petitioner was charged with Assault and Battery Against a Family Member in violation of Va. Code Ann. § 18.2-57.2(A). *Id.* That charge was dismissed on December 28, 2007. *Id.*

---

[2] The factual assertions recited here are taken from the Declaration of Charles M. Byrne, Assistant Field Office Director ("AFOD") with Immigration and Customs Enforcement ("ICE"), Enforcement and Removal Operations ("ERO"). ECF No. 14, attach. 2.

[3] AFOD Byrne declared, under penalty of perjury, that Petitioner was admitted to the United States as a lawful permanent resident. ECF No. 14, attach. 2 at 3. Despite this assertion, repeatedly in their opposition Respondents mischaracterize Petitioner as having unlawfully entered the United States. *See, e.g.* ECF No. 14 at 11 ("Acting Field Office Director Joseph D. Simon on January 7, 2026 . . . explained that Petitioner's Order of Supervised Release was being revoked "based on a review of [his] file and/or [his] personal interview," his criminal history, and unlawful entry into the U.S."); *id.* at 15 ("Aliens, such as Petitioner, who have not effected a lawful entry into the United States are only entitled to due process in the form that Congress prescribed through the INA."); *id.* at 19 ("Indeed, the Supreme Court and Fourth Circuit have made clear that an alien who has not been admitted, like Petitioner, "does not have the same status for due process purposes as an alien who has 'effected an entry.'"). This mischaracterization to the Court is not only concerning in its own right but also suggests that Respondents' due process arguments rest, at least in part, on a misrepresentation or misunderstanding of Petitioner's lawful status and therefore the scope of procedural protections to which he is entitled.

On January 16, 2007, Petitioner was charged with Driving Under the Influence of Alcohol in violation of Va. Code Ann. § 18.2-266 and Carrying a Concealed Weapon in violation of Va. Code Ann. § 18.2-308. *Id.* Petitioner was ultimately convicted of Reckless Driving in violation of Va. Code Ann. § 46.2-852 and sentenced to 30 days' imprisonment, all of which was suspended. *Id.* Petitioner's charge for Carrying a Concealed Weapon was nolle prossed on February 15, 2007. *Id.*

On April 4, 2008, Petitioner was charged with Driving While Intoxicated: First Offense, BAC .08-.14%. *Id.* On October 1, 2008, Petitioner was convicted of that offense and sentenced to 30 days' imprisonment, with all 30 days suspended. *Id.*

On June 15, 2011, Petitioner was convicted in the United States District Court for the Eastern District of Virginia of Accessory After the Fact to Interference With Commerce by Robbery and Extortion, in violation of 18 U.S.C. § 3. *Id.*

On October 28, 2016, the Charleston ERO Federal Criminal Alien Section arrested Petitioner at the Federal Correctional Institute at McDowell in Welch, West Virginia. *Id.* Petitioner was thereafter detained at South Central Regional Jail from October 28, 2016, through November 4, 2016; Cambria County Jail from November 4, 2016, through November 8, 2016; and York County Jail from November 8, 2016, through November 24, 2017. *Id.* at 4–5.

Also on October 28, 2016, Petitioner was issued a Notice to Appear ("NTA") charging him as removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) based on his conviction for an aggravated felony as defined in 8 U.S.C. § 1101(a)(43)(G). *Id.* at 5. The NTA was filed with the Immigration Court on November 17, 2016. *Id.* On January 23, 2017, an Immigration Judge sustained the charge of removability. *Id.*

On March 16, 2017, an Immigration Judge ordered Petitioner removed but granted deferral of removal to El Salvador under the Convention Against Torture ("CAT"). *Id.* The Department of Homeland Security ("DHS") reserved appeal and timely appealed the decision to the Board of Immigration Appeals ("BIA"). *Id.* On August 16, 2017, the BIA dismissed DHS's appeal, rendering Petitioner's order of removal administratively final. *Id.* On November 24, 2017, Petitioner was released from immigration custody pursuant to an Order of Supervision ("OSUP"). *Id.*

On January 7, 2026, Petitioner appeared at the ICE ERO Washington Field Office in Chantilly, Virginia, for a scheduled appointment. *Id.* During that appointment, record checks revealed that "Petitioner had contact with a law enforcement officer" on December 23, 2020, regarding the theft of a drill that had been pawned, which ERO determined constituted a violation of Petitioner's OSUP.[4] *Id.* ERO issued a Notice of Revocation of Release on January 7, 2026. *Id.*; ECF No. 14, attach. 3. On that same date, ERO conducted an informal interview and custody redetermination and determined that Petitioner should be taken back into ICE custody pending removal to a third country. ECF No. 14, attach. 2 at 5. Also on January 7, 2026, ERO personally served Petitioner with a Notification of Intent to Remove to Mexico. *Id.* at 6; ECF No. 14, attach. 4.

On January 9, 2026, Petitioner was personally served with the previously issued Notice of Revocation of Release, although Petitioner refused to sign the notice. ECF No. 14, attach. 2 at 6. On January 10, 2026, Petitioner expressed a fear of removal to Mexico, and ERO referred

---

[4] An explanation of the nature of this "contact"–such as whether Petitioner was considered a suspect, victim, witness, bystander, mistaken for someone else, or any other possibility where one might have "contact" with law enforcement–was not provided. Notably, Respondent does not suggest that Petitioner was convicted, charged, or otherwise implicated in any criminal offense.

4

Petitioner to U.S. Citizenship and Immigration Services ("USCIS") for a third-country fear determination. *Id.*

On January 17, 2026, USCIS issued a negative third-country fear determination regarding Petitioner's proposed removal to Mexico.[5]  *Id.*   A copy of that determination was provided to Petitioner on the same day. *Id.*; ECF No. 25, attach. 1.

On February 6, 2026, ERO attempted to effectuate Petitioner's removal to Mexico through the Hidalgo Port of Entry, but Petitioner refused to disembark from the transport bus.  ECF No. 14, attach. 2 at 6.  On February 18, 2026, a second attempt to remove Petitioner to Mexico through Nogales, Arizona was made, and Petitioner again refused to board the bus to Mexico. *Id.*; *see* ECF No. 14, attach. 5 (extending Petitioner's removal period due to his refusal "to cross the land border into Mexico at the Nogales, AZ Port of Entry").

On February 25, 2026, Petitioner filed the Instant Petition and Motion in the United States District Court for the District of Arizona.  ECF Nos. 1–2.  On that same date, the District of Arizona ordered that Petitioner not be removed pending resolution of the motion for temporary restraining order, and ICE accordingly paused removal efforts.  ECF No. 4.  On March 11, 2026, venue was transferred to the United States District Court for the Eastern District of Virginia.  ECF No. 7. Following this Court's issuance of an Order to Show Cause on March 18, 2026—in which the Court ordered that Petitioner not be removed or transferred pending the outcome of this Petition— ICE's removal efforts remain paused.  ECF No. 11; ECF No. 14, attach. 2 at 6.

Petitioner raises six causes of action: (1) Respondents violated 8 U.S.C. § 1231(b) by attempting to remove Petitioner to Mexico without first providing him a reasonable fear interview

---

[5] There is another inconsistency in the record regarding the date of Petitioner's negative fear determination. The Declaration of AFOD Byrne avers that USCIS issued its negative fear determination on January 17, 2026. ECF No. 14, attach. 2 at 6. However, the Third Country Screening Notice that Respondents provided show that the date of determination was on January 16, 2026. ECF No. 25, attach. 1.

5

and an opportunity to seek reopening of his immigration proceedings after he expressed a fear of removal to a third country; (2) Respondents violated Petitioner's procedural due process rights by attempting to remove him to Mexico without adequate notice and an opportunity to be heard regarding his claimed fear of persecution or harm in Mexico; (3) Respondents violated Petitioner's substantive due process rights under *Zadvydas v. Davis*, 533 U.S. 678 (2001) by continuing to detain him unlawfully despite the absence of a reasonably foreseeable likelihood of removal because Petitioner faces persecution in Mexico; (4) Respondents violated 8 C.F.R. § 241.13(i) by revoking Petitioner's OSUP without following the procedures prescribed by the regulation; (5) Respondents violated the *Accardi* doctrine by failing to comply with their own regulations in revoking Petitioner's OSUP; and (6) Respondents violated Petitioner's procedural due process rights by failing to adhere to applicable regulatory procedures when revoking his OSUP. ECF No. 1 at 9–12. Petitioner requests as relief his immediate release from custody, time to prepare for a reasonable fear interview with respect to any third-country removal, an injunction against Respondents' revocation of Petitioner's OSUP without following the mandatory regulatory process, and an injunction on Respondents from rearresting Petitioner unless he has committed a new violation of law or removing him to a third country where he has fear of persecution or torture, and any other relief the Court deems appropriate.[6] *Id.* at 12–13.

Respondents filed an Opposition to the Petition on March 27, 2026, along with the Declaration of Charles M. Byrne, Assistant Field Office Director with ICE. ECF No. 14; ECF No. 14, attach. 2. Respondents argue that Petitioner's continued detention is lawful under 8 U.S.C. § 1231 and *Zadvydas* because Petitioner has been detained for less than six months and therefore remains within the presumptively reasonable detention period. ECF No. 14 at 7–8. Respondents

---

[6] Petitioner's request for relief has evolved since filing his Petition. *See infra* Part II.B.

further argue that Petitioner cannot demonstrate there is no significant likelihood of removal in the reasonably foreseeable future because ICE has already attempted to remove him to Mexico twice, and those efforts were unsuccessful only because Petitioner refused to comply with the removal process. *Id.* at 8–9. Respondents maintain that no additional procedures are constitutionally required because *Zadvydas* defines the due process requirements for post-removal-order detention. *Id.* at 9–10.

Respondents also argue that ICE lawfully revoked Petitioner's OSUP pursuant to 8 C.F.R. § 241.4(*l*), claiming that the regulation grants ICE broad discretion to revoke supervised release and ICE complied with applicable notice and custody-review procedures before taking Petitioner back into custody. *Id.* at 10–12. With respect to Petitioner's third-country removal claims, Respondents assert that Petitioner already received all process required by law because he was served with notice of the intended removal to Mexico, expressed a fear of removal, and received a third-country fear screening by a USCIS asylum officer, who issued a negative determination. *Id.* at 12. Respondents further assert that this Court lacks jurisdiction to review challenges to the execution of Petitioner's removal order under 8 U.S.C. § 1252(g), that the governing third-country removal procedures established in USCIS's March 2025 Guidance ("the March Guidance") satisfy due process under applicable Supreme Court and Fourth Circuit precedent, and that Petitioner's claims are independently barred because he is a member of the certified non-opt-out class in *D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355 (D. Mass 2025), which involves similar challenges to third-country removal procedures. *Id.* at 13–24.

On April 9, 2026, Petitioner filed his reply to Respondents' Opposition as well as notes from an April 5, 2026, meeting with Petitioner. ECF No. 18; ECF No. 18, attach. 1. Petitioner argues that that his continued detention violates substantive due process because the six-month

presumption recognized in *Zadvydas* is rebuttable and his removal is not reasonably foreseeable while he remains entitled to further review of his third-country removal claims. ECF No. 18 at 2–3. Petitioner maintains that this Court retains jurisdiction because he challenges the adequacy of the procedures used in his removal rather than the decision to execute the removal order itself, and he argues that the pending class action in *D.V.D.* does not bar his claims here. *Id.* at 3–5. Petitioner further argues that Respondents' attempts to remove him to Mexico violate the Immigration and Nationality Act of 1952 ("INA") and procedural due process because he has not received meaningful Immigration Judge review of USCIS's negative third-country fear determination, despite his asserted fear of torture or persecution in Mexico. *Id.* at 5–9. Finally, Petitioner argues that ICE violated 8 C.F.R. § 241.4(*l*), the *Accardi* doctrine, and due process when revoking his OSUP because ICE failed to comply with required procedures governing revocation, interviews, and post-revocation custody review. *Id.* at 9–12.

On May 5, 2026, the Court held a hearing on the Petition, the Motion, and related pleadings. ECF No. 28. The Court asked the parties questions regarding Petitioner's fear of removal interview, the relief sought, specific procedures followed when revoking Petitioner's OSUP, and the parties' *Zadvydas* arguments. *Id.* At the conclusion of the hearing, the Court directed the parties to submit supplemental briefing addressing how the three prongs of Petitioner's argument worked together, any cases supporting the constitutionality of the March Guidance, and—specifically directed to Respondents—providing information regarding the asylum officer who conducted Petitioner's fear interview, any related, pending Fourth Circuit appeals, and the fear assessment worksheet generated during Petitioner's interview. ECF No. 29.

On May 6, 2026, ahead of the deadline to file supplemental briefing, Respondents filed a Notice clarifying statements made during the hearing concerning allegations that individuals

8

removed to Mexico were later sent to El Salvador by Mexican authorities. ECF No. 30. Respondents represented that counsel was unaware of any official Mexican policy to that effect but acknowledged awareness of similar allegations raised in other cases and indicated that, in at least one instance, Mexican authorities informed a removed individual that he could either travel to El Salvador or remain in Mexico to pursue asylum relief there. *Id.* at 1.

On May 11, 2026, Petitioner filed his supplemental briefing addressing how the three prongs of his argument—the revocation of his OSUP, his reasonable fear interview, and the constitutionality of his detention under § 1231 and *Zadvydas*—work together. ECF No. 31. Petitioner argues that Respondents' unlawful revocation of his OSUP independently requires his immediate release because Respondents failed to follow mandatory regulations governing notice, review, and the opportunity to respond; that he was denied a constitutionally adequate reasonable fear interview because he lacked counsel at his interview and did not get Immigration Judge review regarding his fear of removal to Mexico; and that his continued detention violates *Zadvydas* because he has already exceeded the presumptively reasonable detention period and, in any event, his removal is not reasonably foreseeable while his due process claims and requested immigration review remain unresolved. *Id.* Petitioner attached to his supplemental briefing a series of articles regarding Petitioner's fear that, if he is removed to Mexico, Mexico will nonetheless remove him to El Salvador. ECF No. 31, attach. 1.

On May 12, 2026, Respondents filed their supplemental briefing—along with the Declaration of Simone Grant, Associate District Director for DHS—responding to the Court's specified questions. ECF No. 32; ECF No. 32, attach. 1. Respondents identified one federal court that has upheld the constitutionality of the March Guidance, finding that the procedures provided therein satisfy due process even without additional protections such as Immigration Judge review.

9

ECF No. 32 at 1–2. They further assert that no Fourth Circuit appeal currently challenges a district court ruling directly holding the March Guidance unconstitutional, although a pending appeal in *Bojorquez v. Baker*, No. 25-6996 concerns whether district courts have jurisdiction to require Immigration Judge review of third-country fear screenings. *Id.* at 2–3. Respondents also argue that, under prevailing case law, the six-month presumptively reasonable detention period under *Zadvydas* runs from an alien's[7] most recent detention period rather than aggregating prior detention time. *Id.* at 3–4. Finally, they state that Petitioner's fear screening was conducted and reviewed by certified asylum officers with the required training and experience, and they submitted the related screening materials and interview documents under seal. *Id.* at 4–5; ECF No. 36, attachs. 1–2. Accordingly, this matter is ripe for recommended disposition.

## II. DISCUSSION

Pursuant to 28 U.S.C. § 2241, federal courts are authorized to issue a writ of habeas corpus to one who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "The writ of habeas corpus has traditionally 'served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest.'" *Luna Sanchez v. Bondi*, No. 1:25-CV-018888, 2025 WL 3191922, at *2 (E.D. Va. Nov. 14, 2025) (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001)). Habeas is "regularly invoked on behalf of noncitizens." *Id.* (quoting *Quispe-Ardiles v. Noem*, No. 1:25-cv-01382, 2025 WL 2783800, at *3 (E.D. Va. Sept. 30, 2025)) (additional citations omitted).

Pursuant to the Due Process Clause of the Fifth Amendment, no *person* shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Due Process Clause extends to *all* persons, including "aliens, whether their presence here is lawful, unlawful,

---

[7] Consistent with the INA's text, the Court uses the term "alien" here. *See* § 1101(a)(3) (defining an "alien" as "any person not a citizen or national of the United States").

temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "As the Supreme Court has recognized, 'habeas corpus in the federal courts provides a mode for the redress of denials of due process of law. Vindication of due process is precisely its historic office.'" *Castaneda v. Perry*, 95 F.4th 750, 762 (4th Cir. 2024) (citing *Fay v. Noia*, 372 U.S. 391, 402 (1963), *overruled on other grounds by Wainwright v. Sykes*, 433 U.S. 72 (1977)).

### A. This Court has Jurisdiction to Review Petitioner's Claims

As an initial matter, the Court will address—and reject—Respondents' argument that this Court lacks jurisdiction to review Petitioner's claims because he is a member of the certified non-opt-out class in *D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355 (D. Mass 2025). Respondents contend that because Petitioner is a member of a non-opt-out class challenging similar third-country removal procedures, he cannot separately seek the same relief in this Court. ECF No. 14 at 21–24. They assert that because the Supreme Court stayed the nationwide preliminary injunction in *D.V.D.*, this Court should dismiss Petitioner's claims as a matter of comity to avoid conflicting rulings, duplicative litigation, and interference with the ongoing class action proceedings. *Id.* at 21–24.

As Petitioner points out, this Court retains jurisdiction to review Petitioner's claims because he challenges the adequacy of his removal procedures rather than the discretionary decision to execute his removal order. Accordingly, his claims fall within this Court's authority to adjudicate constitutional and statutory challenges to the procedures employed in effecting removal, rather than the merits of his removal order. Other courts within this District have taken up identical claims. *See, e.g., Serpas v. Simon*, No. 1:25-CV-02369, 2026 WL 1244544 (E.D. Va. Feb. 3, 2026) (holding that petitioner's third-country removal to Mexico was not reasonably foreseeable, revocation of his OSUP was deficient, and petitioner was entitled to Immigration

Judge review of his negative fear-of-removal determination); *Rivas Rojas v. Noem*, No. 1:25-cv-1624, Dkt. No. 18, Order (E.D. Va. Nov. 17, 2025) (finding jurisdiction over the petitioner's claims regarding, in part, the denial of petitioner's right to Immigration Judge review of a negative fear-of-removal determination); *Benitez Pineda v. Noem*, No. 1:25-cv-2337, Dkt. No. 17, Order (holding that Respondents violated 8 C.F.R. § 241.4(*l*) in revoking Petitioner's OSUP and finding that petitioner is entitled to Immigration Judge review of his negative fear-of-removal determination).

Furthermore, the pending *D.V.D.* class action does not bar Petitioner's claims. In that case, the District of Massachusetts certified a class of aliens challenging DHS's practice of removing individuals to third countries without adequate notice or opportunity to seek protection, and the court there issued a preliminary injunction requiring the Government to follow certain procedures before carrying out such removals. 778 F. Supp. 3d 355 (D. Mass. 2025). On June 23, 2025, the Supreme Court granted the Government's application to stay the preliminary injunction, which is currently on appeal before the First Circuit. *Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2153 (2025). There has been no final judgment on the merits in *D.V.D.*, which means there is no res judicata effect that would preclude this Court's consideration of Petitioner's claims. *See Brown v. Felsen*, 442 U.S. 127, 131 (1979) ("Under res judicata, 'a final judgment on the merits bars further claims by parties or their privies based on the same cause of action.'" (quoting *Montana v. United States,* 440 U.S. 147, 153 (1979))).

Nor do principles of comity compel a different outcome, as courts have recognized that non-opt-out class membership does not automatically strip district courts of jurisdiction where a petitioner raises individualized claims that, if not adjudicated, could evade meaningful review or result in irreparable harm before class-wide relief is resolved. *See, e.g., Serpas*, 2026 WL 1244544,

12

at *2 ("Petitioner brings claims concerning his ongoing detention, the revocation of an order of supervision, and his removal to a third country under the due process clause, the INA, and the governing regulations that are substantively different than the claims at issue in *D.V.D.*, which largely focused on what procedural due process protections noncitizens subjected to a third-country removal are entitled to."); *Sagastizado v. Noem*, 802 F. Supp. 3d 992, 1008 (S.D. Tex. 2025) ("To dismiss Petitioner's claims for preliminary injunctive relief at this time would effectively preclude [Petitioner] from the relief he seeks entirely and potentially foreclose any relief that he could be entitled to as part of the *D.V.D.* class if he is removed before the class-wide claims are resolved."); *Santamaria Orellana v. Baker*, No. CV 25-1788, 2025 WL 2841886, at *11 (D. Md. Oct. 7, 2025) ("Here, however, [the petitioner] focuses on a due process argument based on the *Accardi* doctrine and the applicability of, but failure to comply with, the regulations in 8 C.F.R. § 1208.31. This argument was not squarely presented in *D.V.D.*, either at the district court or the Supreme Court, and neither court discussed the *Accardi* doctrine or analyzed the applicability of the procedural requirements specified in 8 C.F.R. § 120831(g) and at issue here.").

Accordingly, this Court has jurisdiction to review Petitioner's claims and turns to address the merits.

### B. Petitioner is Entitled to a New Reasonable Fear Interview and Immigration Judge Review of a Negative Determination

Counts I and II of the Petition allege that (1) Respondents violated 8 U.S.C. § 1231(b) by attempting to remove Petitioner to Mexico without first providing him a reasonable fear interview and an opportunity to seek reopening of his immigration proceedings after he expressed a fear of removal to a third country, and that (2) Respondents violated Petitioner's procedural due process rights by attempting to remove him to Mexico without adequate notice and an opportunity to be heard regarding his claimed fear of persecution or harm in Mexico. ECF No. 1 at 9–10.

13

Respondents contend that Petitioner received all the process that is required by law through notice of his intended removal to Mexico, a third-country fear interview before a USCIS asylum officer resulting in a negative determination, and the procedures set forth in the March Guidance, which they argue satisfy due process under governing Supreme Court and Fourth Circuit precedent. ECF No. 14 at 12, 14–21.

Petitioner acknowledges that he received a reasonable fear interview conducted by a USCIS asylum officer and that he is well outside of the statutory window of time in which he can move to reopen his removal order. ECF No. 18 at 4, 8. Based on these recent arguments, it appears that Petitioner no longer meaningfully pursues his claim that Respondents violated 8 U.S.C. § 1231(b) by failing to provide a reasonable fear interview or an opportunity to seek reopening of his immigration proceedings. Instead, Petitioner's arguments focus more on the adequacy of the procedures he received during the removal process and the absence of Immigration Judge review (Count II). Accordingly, the undersigned **RECOMMENDS** that Count I of the Petition be **DENIED**.

Turning to Count II, the undersigned finds that Petitioner is entitled to a new reasonable fear interview before a USCIS asylum officer as well as Immigration Judge review of any negative fear determination as a matter of procedural due process. In determining what procedures due process requires, courts balance three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

The INA authorizes removal to several categories of countries, including the alien's country of citizenship, birth, residence, or another country willing to accept the individual if removal to the primary countries is impracticable, inadvisable, or impossible. 8 U.S.C. § 1231(b). The Secretary of Homeland Security also retains discretion to remove an alien to any country identified under the statute. 8 C.F.R. § 241.15(a). On March 30, 2025, DHS issued guidance establishing procedures for removing aliens with final removal orders to third countries. ECF No. 14, attach. 1. Under the March Guidance, before removing an alien to a third country not previously designated for removal, DHS must determine whether the United States has received credible "diplomatic assurances" that the individual will not be persecuted or tortured. *Id.* at 2. If such assurances exist, then DHS removes the alien "without the need for further procedures." *Id.* at 3. If, however, no such assurances exist, then DHS informs the alien of the intended removal, and only if the alien "affirmatively states a fear of removal" will USCIS conduct a screening within twenty-four hours to determine whether the alien is more likely than not to face persecution or torture. *Id.* If USCIS finds no such risk, the alien will be removed, but if USCIS does find such a risk, then the matter may be referred for further immigration proceedings or ICE may "choose to designate another country for removal." *Id.*

Certain aliens are entitled to credible fear or reasonable fear screenings under 8 C.F.R. §§ 208.30 and 208.31. Here, the parties do not argue that Petitioner is entitled to a credible fear screening under these provisions. In fact, no statute or regulation explicitly provides for Immigration Judge review of a negative third-country fear determination for an alien in Petitioner's position.

Nonetheless, Petitioner contends—and the Court agrees—that he is entitled to a reasonable fear interview that comports with procedural due process and Immigration Judge review of the

15

asylum officer's negative fear determination. Application of the *Mathews* factors weighs in favor of requiring these additional procedural protections. First, Petitioner's interest in avoiding removal to a country where he alleges he faces persecution, torture, or death is substantial. Petitioner has already been granted CAT protection with respect to El Salvador, reflecting a prior determination that he faces a likelihood of torture if removed there. He now alleges that removal to Mexico could result in his transfer to El Salvador or exposure in Mexico to criminal organizations connected to his former gang affiliation.[8] Courts within the Fourth Circuit have repeatedly recognized that such an interest in not being removed to a third country where persecution is likely is "precisely the type of interest" warranting meaningful procedural safeguards before removal. *Serpas*, 2026 WL 1244544, at \*7 (quoting *Cruz Medina v. Noem*, 806 F. Supp. 3d 536, 549 (D. Md. 2025)); *see Mendoza Palacios v. Mullin*, No. 26-CV-648, 2026 WL 933319, at \*6 (D. Md. Apr. 7, 2026) ("That is precisely the type of interest that courts consistently have held is significant enough to justify procedural protections to ensure that individuals who are actually entitled to withholding

---

[8] In support of these allegations, Petitioner's supplemental memorandum provided articles describing reports of individuals removed from the United States to Mexico who were later transferred or pressured to travel to El Salvador. *See* ECF No. 31, attach. 1. Following the May 5, 2026, hearing, Respondents' counsel filed a notice "clarifying" a representation he had made regarding Respondents' knowledge regarding Petitioner's allegations that aliens similarly situated to him with CAT protection who, having previously been removed to Mexico, where subsequently sent by Mexico to El Salvador. ECF No. 30 at 1. Counsel clarified that he was "not aware that Federal Respondents had any knowledge of any purported policy maintained by Mexican authorities" to transfer removed individuals to El Salvador. *Id.* Counsel further represented that he is "generally aware" that similar allegations have been raised by other petitioners and their counsel and understands that, in at least one case, Mexican authorities informed a removed petitioner that he "might be sent to El Salvador" while also presenting options to depart voluntarily to El Salvador or remain in Mexico and pursue asylum there. *Id.*

But whether Petitioner has demonstrated a *likelihood* of persecution or torture in Mexico is *not* the issue before the Court. The issue before the Court, for due process purposes, is *whether his interest in avoiding such treatment entitles him to procedural due process protections. See Mendoza Palacios v. Mullin*, No. 26-CV-648, 2026 WL 933319, at \*6 (D. Md. Apr. 7, 2026) ("The question for purposes of this prong of the procedural due process analysis [nature of the private interest protected] is not whether [petitioner] has shown that she is likely to face persecution or torture in Mexico, but rather whether the nature of her interest in avoiding persecution or torture entitles her to some form of procedural due process."). The Court finds that it does.

of removal under § 1231(b)(3)(A) or the Convention Against Torture receive such protection."). Accordingly, the first *Mathews* factor weighs strongly in Petitioner's favor.

The second factor—the risk of erroneous deprivation and the value of additional safeguards—likewise supports Petitioner. Petitioner reported that he repeatedly requested counsel before his fear interview but was unable to successfully contact his attorney due to limited phone access at the detention facility and the short notice provided to Petitioner. ECF No. 18, attach. 1 at 1. He nevertheless proceeded through the interview without counsel and thereafter received a negative fear determination from a single asylum officer.[9] *Id.* at 1–2. Petitioner further asserts that the worksheet he was provided did not fully capture the substance of his interview and that, despite being informed he could appeal asylum officer's determination, Respondents attempted to remove him to Mexico within hours of issuing the negative decision. *Id.* at 2. Unlike other

---

[9] The asylum officer has not been identified, despite the Court's Order specifically directing Respondents to identify them and their level of experience. ECF No. 29 at 2 ("Respondents shall provide: (1) the identity and level of experience of the USCIS asylum officer who conducted Petitioner's fear of removal interview[.]"). Instead, Respondents identified the asylum officer only as "ZAP 081" based on "agency concerns regarding potential doxxing exposure for the Officers' [sic], the Officers' security and safety, and confidentiality." ECF No. 32 at 4 n.4. Respondents offer to instead provide the name only in camera "if the Court requires the names of the individual Asylum Officers." *Id.* at 5 n.4.

This is, of course, *exactly* what the Court required when it issued its previous Order. By refusing to disclose the officer's identity as ordered and offering instead to submit the information only in camera, Respondents failed to comply with the Court's directive as issued. Offering to disclose this information only in camera raises questions about whether this information was ever disclosed to Petitioner.

The Court is unpersuaded by Respondents' conclusory assertion that public disclosure of the officer's identity would create security or confidentiality concerns. Respondents have offered no individualized explanation why identifying this specific officer—who was performing ordinary agency functions in connection with Petitioner's fear interview—would expose the officer to any meaningful risk. Absent some particularized showing, the interest in concealing the identity of a public official exercising governmental authority is minimal. Public officials who exercise coercive governmental authority are not entitled to anonymity as a default condition of performing their duties, and Respondents' refusal to comply with the Court's straightforward order is therefore troubling. *See Urquilla-Ramos v. Trump*, No. 2:26-cv-66, 2026 WL 475069, at *7 (S.D.W. Va. Feb. 19, 2026) ("When authority is no longer traceable, it is no longer a legitimate exercise on behalf of the people."); *id.* at *15 ("And preventing identification serves only to eliminate accountability.").

immigration proceedings involving fear-based claims, where a negative fear determination may be reviewed by an Immigration Judge, Petitioner was afforded no Immigration Judge review of the asylum officer's determination. *See* 8 C.F.R. §§ 208.31(g), 1208.31(g) (providing for Immigration Judge review of negative fear determinations in proceedings where an alien faces reinstatement of a removal order).

The absence of such review significantly increases the risk of erroneous deprivation, particularly where the consequences of removal may be severe and irreversible. These concerns are particularly pronounced here, where Petitioner had already been granted CAT protection as to El Salvador, ███████████████████████████████████████ ████████████████ and was nearly removed within hours of receiving a negative fear determination without any meaningful opportunity for further review. *See, e.g., Mendoza Palacios*, 2026 WL 933319, at *7 ("[W]here a person alleges that she would be persecuted or tortured if removed to a particular country, a single review by an asylum officer creates an unacceptably high risk of erroneous deprivation."); *Cruz Medina*, 806 F. Supp. 3d at 549 ("[A] single review by an asylum officer creates an unacceptably high risk of erroneous deprivation."); *A.A.M. v. Andrews*, 815 F. Supp. 3d 1124, 1138 (E.D. Cal. 2025) ("If an immigration judge does not review USCIS's determination, including the evidence Petitioner provided, Petitioner will not have the opportunity to present his fear-based claim to a neutral adjudicator for correction of USCIS's potentially erroneous determination. And should Petitioner be erroneously removed to Cameroon, there would be no avenue for him to vindicate his rights in the United States."). Additional safeguards in the form of a new reasonable fear interview with access to counsel and review by an Immigration Judge would protect against erroneous removal while ensuring Petitioner has a meaningful opportunity to be heard.

The risk of erroneous deprivation is all the more heightened here. According to Respondents' Exhibit 3,[10]



███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████

Respondents assert that, instead of getting a new fear interview and Immigration Judge review, Petitioner can just file a motion to reopen removal proceedings to obtain the Immigration Judge review he seeks.[12]  ECF No. 14 at 20.  However, as Petitioner points out, he is well outside the statutory deadline for filing a motion to reopen removal proceedings since his removal order became final in 2017 and he is provided ninety days from the entry of said order to file such a motion.  8 U.S.C. § 1229a(c)(7)(C)(i) ("Except as provided in this subparagraph, the motion to reopen shall be filed within 90 days of the date of entry of a final administrative order of removal.").  Moreover, there would be no guarantee that the motion to reopen would be granted, and the mere availability of such a discretionary mechanism is inadequate process in the context of third-country removals.  *See Serpas*, 2026 WL 1244544, at *7 ("Simply allowing the petitioner to move to reopen their immigration proceedings is not enough to satisfy Due Process—the Government must actually reopen proceedings so that the petitioner has a fair and adequate opportunity to be heard." (quoting *Arenado-Borges v. Bondi*, No. 2:25-cv-2193, 2025 WL 3687518, at *6 (W.D. Wash. Dec. 19, 2025))).

---

[12] Petitioner shared Respondents' position until recently.  Petitioner's original position was that he sought "the opportunity to reopen his proceedings before an immigration court" in addition to a reasonable fear interview.  ECF No. 1 at 2.  However, Petitioner has since abandoned that argument and now contends in his reply that the statutory period or filing a motion to reopen has long since expired and that such relief is no longer available to him.  ECF No. 18 at 8.

20

Finally, the third *Mathews* factor also favors Petitioner because the additional procedures requested impose only a limited burden on Respondents. As previously discussed, Immigration Judge review of negative fear determinations already exists in analogous immigration proceedings, including reinstatement and expedited removal contexts, and courts have recognized that such review is not unduly burdensome. *See, e.g.*, *Tomas-Ramos v. Garland*, 24 F.4th 973, 978 (4th Cir. 2022) (finding that a "reasonable fear review hearing" before an Immigration Judge "is not as comprehensive or in-depth as a withholding of removal hearing," but is instead "a review of the [ ] asylum officer's decision" (citation and internal quotation marks omitted)); *Sagastizado*, 802 F. Supp. 3d at 1012 ("Requiring [Immigration Judge] review in Petitioner's case provides significant but minimally burdensome procedural safeguards in the form of independent review by a subject-matter expert and the opportunity to receive a written explanation of a denial by an [Immigration Judge]."). Such review is all the more important where, as here, the asylum officer provided no reason or explanations for their decision.

Moreover, requiring a new interview and Immigration Judge review would impose only a minimal burden on Respondents' interest in promptly executing removal orders, particularly given that such review already exists in analogous immigration proceedings and is ordinarily conducted within ten days of any negative fear determination. *See* 8 C.F.R. § 1208.31(g) ("In the absence of exceptional circumstances, such review shall be conducted by the immigration judge within 10 days of the filing of the Form I-863, Notice of Referral to Immigration Judge, and the complete record of determination with the immigration court."); *Sagastizado*, 802 F. Supp. 3d at 1013 (recognizing that the Government has a "significant interest in the prompt execution of removal orders," but that limited Immigration Judge review of a negative fear determination imposes only

a "minimal delay" in the removal process and serves the public interest in "preventing aliens from being wrongfully removed" (quoting *Nken v. Holder*, 556 U.S. 418, 436 (2009))).

Respondents' contention that the procedures set forth in the March Guidance provide all process that is constitutionally required is likewise unpersuasive. ECF No. 14 at 12, 14–21. Courts that have considered this issue have overwhelmingly concluded that the lack of Immigration Judge review raises serious due process concerns and, in some instances, renders the March Guidance unconstitutional. *See, e.g., Faragalla v. Crawford*, No. 3:26-CV-63, 2026 WL 541132, at *7 (E.D. Va. Feb. 26, 2026) ("Respondent argues that all the process [petitioner] would be owed in such a circumstance is set out in the March Guidance and summarized in the eight-step process discussed *supra*. . . . But district courts within the United States Court of Appeals for the Fourth Circuit and across the country have found that the process in the March Guidance is unlawful." (citation omitted)); *Escobar v. Chestnut*, No. 1:25-cv-01801, 2025 WL 3687639, at *4 (E.D. Cal. Dec. 19, 2025) ("Courts across this circuit have found that ICE's policy, as described in the March and July Memoranda, is likely unconstitutional." (citing cases)).    In their supplemental memorandum, Respondents cite one decision upholding the constitutionality of the March Guidance, *Gutierrez de Guerra v. Warden, Port Isabel Serv. Processing Ctr.*, No. 1:26-CV-327, 2026 WL 1179777, at *5 (S.D. Tex. Apr. 30, 2026).  However, that outlier decision is not at all a persuasive comparison to the substantial body of case law finding that procedures without meaningful Immigration Judge review do not satisfy due process requirements in the context of fear-based removal determinations.    Accordingly, the Court declines to adopt Respondents' position that the March 2025 Guidance, standing alone, provides constitutionally sufficient process.

When balancing all three *Mathews* factors, due process requires that Petitioner be afforded a new reasonable fear interview with access to counsel and Immigration Judge review of any negative fear determination before Respondents may remove him to Mexico, consistent with the regulations governing analogous contexts. *See* 8 C.F.R. §§ 208.31, 1208.31. Accordingly, the undersigned **RECOMMENDS** that Count II of the Petition be **GRANTED**.

## C. Petitioner's Continued Detention is Unlawful Under 8 U.S.C. § 1231

Count III of the Petition alleges that Respondents violated Petitioner's substantive due process rights under *Zadvydas* by continuing to detain him unlawfully despite the absence of a reasonably foreseeable likelihood of removal. ECF No. 1 at 10. Petitioner argues that he has rebutted any presumption of foreseeability because of his asserted fear of persecution and torture in Mexico, and because he is entitled to Immigration Judge review of his fear-based claim. EC No. 18 at 2–3. Respondents argue that Petitioner's detention is presumptively reasonable because he has been detained pursuant to his final order of removal for less than six months following his re-detention in January 2026. ECF No. 14 at 7–8. They further argue that Petitioner cannot establish that his removal is not reasonably foreseeable, particularly because ICE has already attempted to remove him to Mexico on two occasions and those efforts were unsuccessful only because Petitioner refused to comply with the removal process. *Id.* at 8–9.

After an order of removal becomes final, the Attorney General "shall detain the alien" during the ninety-day removal period established under 8 U.S.C. § 1231(a)(2). *Zadvydas*, 533 U.S. at 683. The Supreme Court in *Zadvydas* held that the INA contains an implicit limitation of this detention period past ninety days: detention is presumptively reasonable for up to six months. *Id.* After that six-month period has elapsed, if the alien demonstrates "that there is no significant likelihood of removal in the reasonably foreseeable future," then the Government must respond

23

with evidence sufficient to rebut that showing. *Id.* The six-month presumption does not require automatic release once an alien's detention reaches six months; rather, an alien may remain detained until it is determined that there is no significant likelihood of removal in the reasonably foreseeable future. *Id.*

Respondents correctly note that Petitioner remains within the presumptively reasonable six-month detention period recognized in *Zadvydas*. Petitioner was re-detained on January 7, 2026, and courts within this district have generally held that the six-month period is measured from the most recent detention or re-detention, rather than by aggregating prior periods of custody. *See, e.g., Lee v. Crawford*, No. 2:25-CV-535, 2026 WL 745263, at *3 (E.D. Va. Feb. 27, 2026), *report and recommendation adopted*, No. 2:25-CV-535, 2026 WL 738591 (E.D. Va. Mar. 16, 2026) ("The weight of authority holds that when an alien is re-detained pursuant to a final order of removal, the six-month presumptively reasonable period runs from the date of the most recent detention, not from any prior period of custody."); *Shaikh v. Lyons*, No. 1:25-CV-811, Dkt. No. 12 at 6 (E.D. Va. June 23, 2025) ("Seeking to avoid this conclusion, Petitioner asserts that, for purposes of the *Zadvydas* analysis, his current period of detention should be combined with prior periods of detention; this is incorrect."). Accordingly, Petitioner's current detention has not yet exceeded six months and is presumptively reasonable.

However, that presumption does not categorically bar judicial review before six months have elapsed. Rather, courts have recognized that a petitioner may rebut the presumption by demonstrating that removal is not reasonably foreseeable. *See Cruz Medina*, 794 F. Supp. 3d at 375 ("During the six-month period, '[t]he presumption of reasonableness is the default,' and the government 'bears no burden to justify detention.' . . . But if a petitioner 'claim[s] and *prove[s]* . . . that his removal is not reasonably foreseeable'—including during the six-month period—the

petitioner 'can overcome that presumption' and detention is no longer authorized." (citation omitted)); *Serpas*, 2026 WL 1244544, at *4 ("As other courts in this Circuit have recognized, the Supreme Court in *Zadvydas* did not announce a categorical bar on challenging detention prior to six months, but rather a rebuttable presumption that 180 days of detention is reasonable"). Thus, the Court will still consider whether Petitioner has shown that his removal is not reasonably foreseeable.

The Court concludes that Petitioner has made such a showing. As discussed above, due process requires that Petitioner receive a new fear interview with access to counsel and review by an Immigration Judge of any negative fear determination before Respondents may remove him to Mexico. *See supra* Part II.B. Until those procedures occur, Petitioner's removal cannot be considered reasonably foreseeable. *See Portela-Hernandez v. Trump*, No. 25-1633, 2026 WL 74042, at *14 (D. Md. Jan. 9, 2026) ("Without immigration judge review of the negative fear finding, the Government has not afforded [petitioner] all the process he is constitutionally due. . . . Respondents cannot overcome *Zadvydas*'s due process requirements by skipping other procedures that are constitutionally due."); *Nolasco Renderos v. Baker*, 814 F. Supp. 3d 598, 607 (D. Md. 2026) ("[Petitioner] is entitled to the protections of 8 C.F.R. § 208.31, and yet the government has not yet initiated these procedures. . . . Respondents have refused to follow the procedures required by the governing regulations, and it is that refusal that is the source of delay in the adjudication of Petitioner's claim."); *Sanchez v. Noem*, No. 5:25-CV-104, 2025 WL 3760317, at *10 (S.D. Tex. Nov. 14, 2025) ("Without providing for [Immigration Judge] review of the [reasonable fear interview] in compliance with the Court's injunction, there is no possibility for lawful removal of [petitioner] to Mexico.").

25

Respondents' argument that removal is foreseeable because they attempted to remove Petitioner to Mexico twice is unpersuasive, as those attempted removals occurred before Petitioner was afforded the procedural protections to which he is constitutionally entitled. The fact that Petitioner refused to comply with removals that had not yet satisfied due process requirements does not establish that any lawful removal is reasonably foreseeable.

Petitioner has sufficiently demonstrated that his removal is not reasonably foreseeable until Respondents provide the procedural protections required by due process. Accordingly, the undersigned **RECOMMENDS** that Count III of the Petition be **GRANTED** to the extent Petitioner seeks release from detention pending completion of constitutionally adequate removal proceedings.

### D. Respondent's Revocation of Petitioner's Order of Supervision Was Unlawful

Counts IV, V, and VI allege that Respondents violated 8 C.F.R. § 241.13(i), the *Accardi* doctrine[13], and substantive due process requirements when revoking Petitioner's OSUP because they failed to follow the required procedures governing revocation and post-revocation review. ECF No. 1 at 11–12. Specifically, Petitioner contends that the revocation notice did not explain why revocation was in the public interest or why referral to the Executive Associate Commissioner was impracticable, that he was never afforded the required post-custody informal interview addressing the reasons for revocation, and that Respondents failed to provide a three-month review of the revocation decision. ECF No. 18 at 10–11. Petitioner further argues that the interview he did receive occurred before the revocation notice was issued and concerned unrelated background

---

[13] The *Accardi* doctrine is an administrative law principle that requires an agency to follow its own procedures, rules, and regulations. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954) (setting aside a deportation order where BIA failed to follow its procedures for deportation proceedings); *see Nader v. Blair*, 549 F.3d 953, 962 (4th Cir. 2008) ("[W]hen an agency fails to follow its own procedures or regulations, that agency's actions are generally invalid.").

26

issues rather than the stated grounds for revocation, depriving him of a meaningful opportunity to respond. *Id.* at 11.

Respondents argue that ICE complied with 8 C.F.R. § 241.4(*l*) when revoking Petitioner's OSUP because the regulation grants DHS broad discretion to revoke supervised release whenever continued release is no longer appropriate. ECF No. 14 at 10–11. They contend that Petitioner received adequate notice through the written revocation notice and removal notice, and that ICE conducted the required informal interview and custody redetermination before deciding to detain him. *Id.* at 11. Respondents further maintain that the regulation does not require detailed findings regarding the public interest or referral to the Executive Associate Commissioner, and that the revocation decision is committed to agency discretion and therefore not subject to judicial review. *Id.* at 11–12.

The INA provides for certain procedures when revoking an alien's OSUP. First, the alien "will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(*l*)(1). Second, the "Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section." *Id.* § 241.4(*l*)(2). "A district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." *Id.* Finally, if the alien is not released from custody following the "informal interview" described above, the regulations provide for a "normal review process" of the custody determination, "which will ordinarily be expected to occur within approximately three months after release is revoked." *Id.* § 241.4(*l*)(3).

Here, Respondents failed to comply with the procedures required under 8 C.F.R. § 241.4(*l*) when revoking Petitioner's OSUP.  First, the Notice of Revocation did not explain why revocation was "in the public interest" or why "circumstances d[id] not reasonably permit referral" to the Executive Associate Commissioner, as expressly required under § 241.4(*l*)(2).  Instead, the notice merely referenced Petitioner's criminal history, wrongfully asserted his "unlawful entry," and identified a third country for removal without addressing the regulatory findings necessary to justify revocation by the district director.  *See* ECF No. 14, attach. 3.

Second, although Respondents contend that Petitioner received the required informal interview under § 241.4(*l*)(1), the record reflects that the interview occurred *before* Petitioner was served with the Notice of Revocation.  Respondents assert that ERO issued the Notice on January 7, 2026, and conducted the informal interview that same day, but Petitioner was not personally served with the Notice until two days later, on January 9, 2026.  ECF No. 14, attach. 2 at 5–6.  Moreover, during the interview, Petitioner was mainly asked questions about the legal status of his family rather than the stated grounds for revocation.  ECF No. 18, attach. 1 at 1.  The lack of notice combined with the focus of the interview on unrelated background matters deprived Petitioner of a meaningful opportunity to respond to the reasons for revocation after being returned to custody.

Finally, Respondents have not complied with § 241.4(*l*)(3), which requires review of the revocation decision within approximately three months after release is revoked.  Petitioner's counsel represented at the May 5, 2026, hearing that Petitioner received notice on May 1, 2026, that a custody review had been scheduled for June 1, 2026.  However, that notice does not establish compliance with § 241.4(*l*)(3).  The regulation contemplates that the "normal review process" will "ordinarily be expected to occur within approximately three months after release is revoked."  8 C.F.R. § 241.4(*l*)(3).  Petitioner's OSUP was revoked in January 2026, yet the scheduled review

28

would not occur until nearly five months later. Under these circumstances, the delayed scheduling of a review after litigation commenced does not cure Respondents' earlier failure to comply with the regulation.

Combined, these deficiencies demonstrate the Respondents failed to follow their own regulations in violation of the *Accardi* doctrine, and thereby deprived Petitioner of his substantive right to due process. Respondents failed to comply with the procedures set forth in 8 C.F.R. § 241.4(*l*) when revoking Petitioner's OSUP, in violation of the governing regulations, the *Accardi* doctrine, and Petitioner's due process rights. Accordingly, the undersigned **RECOMMENDS** that Counts IV, V, and VI of the Petition be **GRANTED**.

### E. Petitioner's Motion for Temporary Restraining Order and Preliminary Injunction

In addition to habeas relief, Petitioner seeks injunctive relief requiring a reasonable fear interview, an opportunity to seek reopening before the immigration court following any adverse determination, and an order preventing removal pending those procedures. ECF No. 2 at 3–4. Petitioner further contends that he faces irreparable harm because DHS has twice attempted to remove him to Mexico without affording these protections, while the requested procedures would impose only minimal burdens on the Government and would serve the public interest in ensuring compliance with constitutional and immigration law requirements. *Id.* at 7–10. Respondents filed their Opposition to the Motion, ECF No. 15, which is the same document as their Opposition to the Petition, ECF No. 14.

Because the relief requested in Petitioner's Motion substantially overlaps with the relief addressed and granted through the Court's disposition of the Petition, the Motion no longer presents a live controversy requiring separate adjudication. The Court has already determined the procedures to which Petitioner is entitled before any removal to Mexico may occur and has

29

addressed the legality of his continued detention and revocation of supervision. Accordingly, the undersigned **RECOMMENDS** that Petitioner's Motion, ECF No. 2, be **DISMISSED** as moot.

## III. RECOMMENDATIONS

For the reasons explained above, the undersigned **RECOMMENDS** that the Petition, ECF No. 1, be **GRANTED** in part and **DENIED** in part, and that the Motion for Temporary Restraining Order and Preliminary Injunction, ECF No. 2, be **DISMISSED** as moot.

The undersigned further **RECOMMENDS** that Petitioner be **RELEASED** from custody immediately, and that Petitioner's Order of Supervision be **RESTORED** immediately, not to be revoked unless done so in compliance with the requirements of 8 C.F.R. § 241.4.

The undersigned further **RECOMMENDS** that Respondents be **ENJOINED** from removing Petitioner from this judicial district and the United States unless and until: (1) he has received a new reasonable fear interview accompanied by his attorney; (2) in the event of another negative fear determination, he has first received review by an Immigration Judge should he request it, pursuant to 8 C.F.R. § 208.31(g); and (3) all other requirements of 8 C.F.R. § 208.31(g) have been satisfied.

## IV. SEALING AND UNSEALING PROCEDURES

The Clerk is **DIRECTED** to maintain this Report and Recommendation under seal for fourteen (14) days from the date of this Report and Recommendation to permit any party to appeal the Court's sealing determination to the District Judge pursuant to Federal Rule of Civil Procedure 72(a). If no party files an appeal within that period, the Clerk is **DIRECTED** to unseal this Report and Recommendation on the public docket. If any party files an appeal, the Clerk is **DIRECTED** to maintain the unredacted Report and Recommendation under seal pending resolution of the appeal by the District Judge.

30

## V. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, Petitioner is notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party. *See* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1954).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to Petitioner at his address on record.

/s/

Lawrence R. Leonard
**United States Magistrate Judge**

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
May 29, 2026

31